UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ARTHUR L. VERTNER and CRAIG
WILLIAMSON,

        Plaintiffs,

        v.

TAC AMERICAS, INC.,

        Defendant.

Case No. C07-0385RSL

ORDER GRANTING
DEFENDANT'S MOTION TO
COMPEL ARBITRATION AND
DENYING PLAINTIFFS' MOTIONS
FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on defendant's "Motion to Compel Arbitration" (Dkt. #12) and plaintiffs' motions for "Summary Judgment Regarding Payment of Retained Amount" (Dkt. #17) and for "Partial Summary Judgment Regarding Arbitrability and Burden of Proof Issues" (Dkt. #20).  For the reasons discussed below, defendant's motion to compel arbitration is granted and plaintiffs' motions for summary judgment are denied.[1]

---

[1] Because this matter can be decided on the memoranda, declarations, and exhibits submitted by the parties, defendant's request for oral argument is DENIED.

ORDER GRANTING DEFENDANT'S
MOTION TO COMPEL ARBITRATION
AND DENYING PLAINTIFFS' MOTIONS
FOR SUMMARY JUDGMENT- 1

## II.  FACTUAL BACKGROUND

**A.    The Merger Agreement**

On November 23, 2004, defendant TAC Americas, Inc. ("TAC"), through TAC Acquisition Corporation, entered into an Agreement and Plan of Merger ("Merger Agreement") with Abacus Engineered Systems, Inc.[2]  <u>See</u> Declaration of Daniel Tews in Support of Motion to Compel Arbitration ("Tews Decl.") (Dkt. #13), Ex. A (Merger Agreement).  As part of the Merger Agreement, TAC agreed to pay the owners of Abacus $25,000,000 at closing, subject to the retention of certain amounts, including the "Estimated Net Indebtedness," the "Adjustment Amount" and the "Retained Amount."  Merger Agreement, § 3.1.  It is the Retained Amount that is the focus of the current dispute.

Pursuant to § 2.5(b) of the Merger Agreement, TAC withheld $4.3 million as the Retained Amount at closing.  The Retained Amount was then to be used to account for post-closing adjustments to the valuation of the company based on the actual performance of certain specified contracts that had not yet been completed.  <u>Id.</u> at § 2.5.  Then, "as soon as practicable" after the completion of the performance contracts, and no later than March 31, 2007, TAC was to provide the shareholder representatives with written notification indicating how much of the Retained Amount would be returned and how much would be retained.  <u>Id.</u> at § 5.28(b).  Specifically, TAC's written notice was to provide, in "reasonable detail," (1) the actual gross profit of each performance contract; (2) the aggregate total amount of actual gross profit; and (3) "the amount of any proposed adjustment to the Retained Amount in accordance with 5.28(c) below."  § 5.28(c), in turn, lays out the method by which the adjustment in the Retained Amount is to be calculated:

---

[2] Under § 10.7 of the Merger Agreement, plaintiffs Arthur L. Vertner and Craig Williamson were appointed as shareholder representatives to act as the agents and attorneys-in-fact for all Abacus shareholders.  Plaintiff Mark Kinzer has also subsequently been appointed as a shareholder representative.

the Retained Amount shall be reduced by the difference (if any) between (A) the Aggregate Forecasted Gross Profit and (B) the Aggregate Actual Gross Profit.  Notwithstanding the foregoing, there shall be no reduction in the Retained Amount to the extent such difference is caused by any failure of the Buyer and the Surviving Corporation to operate the business of the Surviving Corporation in a commercially reasonable and prudent manner consistent with past practices.  For the purpose of calculating the Aggregate Forecasted Gross Profit, an adjustment shall be made to decrease such amount to the extent the Company's performance is excused under any force majeure clause of a Performance Contract.

The Merger Agreement anticipates that the shareholder representatives may dispute the accuracy of the information contained in TAC's notice under § 5.28(b) and provides the following dispute resolution process: "If the Shareholder Representative disagrees with any of the information in the notice as presented by the Buyer, the Parties shall follow the same resolution procedure provided in Sections 3.4 and 3.5."  Id. at § 5.28(b).  Under this procedure, the shareholder representatives are to deliver a notice to TAC either concurring or disagreeing with TAC's calculations.  Id. at § 3.4.  If the shareholder representatives disagree with any of the information contained in TAC's written notice, they are to concurrently deliver a report setting forth their proposed adjustments.  Id.  As part of this process, TAC is to grant access to "all books and records, including work papers, reasonably requested" by the shareholder representatives.  Id.  Further, the shareholder representatives and their accountants are to be given "reasonable access to the Company, its employees and accountants," and TAC is to make "commercially reasonable efforts to cause any such accountants or employees to cooperate with and respond to such inquiries."  Id.  Following the receipt of a notice of disagreement, both parties are to spend two weeks using "their best efforts to reach agreement."  Id. at § 3.5.  If no agreement can be reached, the parties are to then submit their dispute to mutually agreed upon "internationally recognized accounting firm" to produce a report setting forth its own calculation.  Id.  This report "shall be final, conclusive and binding upon the Parties."  Id.

**B.     The Dispute**

ORDER GRANTING DEFENDANT'S
MOTION TO COMPEL ARBITRATION
AND DENYING PLAINTIFFS' MOTIONS
FOR SUMMARY JUDGMENT- 3

On February 22, 2006, TAC provided the shareholder representatives with its first written notice of intent to adjust the amount of the Retained Amount due to shortfalls in certain performance contracts. Declaration of Daniel Tews in Support of Opposition to Plaintiffs' Motion for Summary Judgment ("Tews Decl. II") (Dkt. #32), Ex. A. This preliminary notice included a spreadsheet indicating the actual gross profit on each performance contract and the aggregate total amount of actual gross profit. The notice further indicated that the shareholder representatives would be provided with additional adjustments prior to the Merger Agreement's March 31, 2007 deadline. Id. The shareholder representatives responded to this preliminary notice in a March 15, 2006 letter requesting additional information relating to TAC's performance of the contracts in question. Declaration of Brian Meenaghan ("Meeneghan Decl.") (Dkt. #18), Ex. 1. The shareholder representative sent an additional letter on May 19, 2006 indicating that TAC's February 22, 2006 letter failed to include sufficient "reasonable detail" to allow the shareholder representative to determine whether TAC's deductions had merit. Id., Ex. 2.

On December 31, 2006, TAC delivered a new letter to the shareholder representatives providing final formal notice of its intent to retain $4,080,447 of the original $4,300,000 Retained Amount. Id., Ex. 3. The letter indicated that any disagreement with TAC's proposed adjustment should be handled in accordance with the dispute resolution procedures contained in §§ 3.4 and 3.5 of the Merger Agreement. Counsel for the shareholder representatives responded on January 18, 2007 acknowledging receipt of TAC's notice, but again challenging the sufficiency of the notice due to the lack of "reasonable detail" contained in TAC's proposed adjustment. Id., Ex. 4. The letter argued that any notice must contain sufficient details to "allow the Shareholder Representative group to determine whether it agrees or disagrees with the deduction, and if it disagrees, to allow the Shareholder Representative group to 'concurrently

ORDER GRANTING DEFENDANT'S
MOTION TO COMPEL ARBITRATION
AND DENYING PLAINTIFFS' MOTIONS
FOR SUMMARY JUDGMENT- 4

1    deliver to the Buyer a report setting forth its proposed adjustments . . .'." Id.  It went on to list

2    the information that the shareholder representatives would require in order to consider TAC's

3    notice valid.  Id.

4           TAC responded to the shareholder representatives' January 18, 2007 letter on January 25,

5    2007 by indicating (a) that it considered its notice under § 5.28(b) to be sufficient, (b) that it

6    understood the shareholder representatives' response to constitute a rejection of TAC's proposed

7    retained amount, and (c) that it was prepared to begin the dispute resolution procedures as

8    described in § 3.4 by granting the shareholder representatives "reasonable access" to the

9    company's records and employees.  Id., Ex. 5.  The shareholder representatives nevertheless

10   continued to contest the sufficiency of TAC's notice and the parties continued to exchange

11   similar correspondence throughout February and the early part of March.  See Id., Exs. 6-8, 11.

12   Plaintiffs eventually filed this lawsuit on March 16, 2007.  Soon after, defendant moved to

13   compel arbitration and plaintiffs responded by filing their own motions for summary judgment.

14                                **III.  LEGAL DISCUSSION**

15          As a threshold matter, the Court must first address defendant's motion to compel

16   arbitration.  Though the Supreme Court has stated that "arbitration is a matter of contract and a

17   party cannot be required to submit to arbitration any dispute which he has not agreed so to

18   submit," United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582

19   (1960), it has also "long recognized and enforced a 'liberal federal policy favoring arbitration

20   agreements.'"  Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting Moses

21   H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).  If neither party

22   contests the validity of the underlying contract, as is the case here, the primary task of a court

23   presented with a motion to compel arbitration is to determine "whether an arbitration clause in a

24   concededly binding contract applies to a particular type of controversy."  Id. at 84.  When a

25

26   ORDER GRANTING DEFENDANT'S
     MOTION TO COMPEL ARBITRATION
     AND DENYING PLAINTIFFS' MOTIONS
     FOR SUMMARY JUDGMENT- 5

1    district court undertakes this analysis, "the most minimal indication of the parties' intent to

2    arbitrate must be given full effect. . . ." Republic of Nicaragua v. Standard Fruit Co., 937 F.2d

3    469, 478 (9th Cir. 1991).  If a district court determines that the parties to a lawsuit have entered

4    into a binding arbitration agreement that covers the dispute at issue in the lawsuit, it shall

5    "direct[ ] the parties to proceed to arbitration in accordance with the terms of the agreement."

6    Id. at § 4.  "[T]he [Federal Arbitration] Act leaves no place for the exercise of discretion by a

7    district court, but instead mandates that district courts shall direct the parties to proceed to

8    arbitration on issues as to which an arbitration agreement has been signed." Dean Witter

9    Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985).

10          The "arbitration clause" at issue here is contained in § 5.28(b) of the Merger Agreement:

11          As soon as practicable after the completion date of the Performance
            Contracts, and in any event not later than March 31, 2007, the Buyer shall
12          provide written notice to the Shareholder Representative specifying in
            reasonable detail (i) the actual gross profit of each Performance Contract as
13          determined in accordance with the Calculation, (ii) the aggregate total
            amount of the actual gross profit thereof (the 'Aggregate Actual Gross
14          Profit'), and (iii) the amount of any proposed adjustment to the Retained
            Amount in accordance with 5.28(c) below.  *If the shareholder*
15          *Representative disagrees with any of the information in the notice as*
            *presented by the Buyer, the Parties shall follow the same resolution*
16          *procedure provided in Sections 3.4 and 3.5.*

17   (emphasis added).[3]  As described above, §§ 3.4 and 3.5 lay out a dispute resolution procedure

18   that ultimately leads to a "final, conclusive and binding" report issued by a mutually agreed

19   upon accounting firm.  Plaintiffs contend that the current dispute is not subject to the dispute

20

21   _____

22          [3] Though plaintiffs imply that the dispute resolution procedures laid out in §§ 3.4 and 3.5 should
     not be considered arbitration because the Merger Agreement does not explicitly identify the dispute
23   resolution procedures as arbitration, they provide no legal support for reaching such a conclusion.  See
     Plaintiffs' Response at p. 6; Plaintiffs' Motion for Partial Summary Judgment at p. 6.  Nor has the Court
24   found any such support.  See Ross v. Twentieth Century Fox Films Corp., 236 F.2d 632, 634-35 (9th
     Cir. 1956); Omni Tech Corp. v. MPC Solutions Sales, LLC, 432 F.3d 797 (7th Cir. 2005) (finding similar
25   accountant review provision to be an arbitration clause).

26   ORDER GRANTING DEFENDANT'S
     MOTION TO COMPEL ARBITRATION
     AND DENYING PLAINTIFFS' MOTIONS
     FOR SUMMARY JUDGMENT- 6

1   resolution process contained in §§ 3.4 and 3.5 because the accountant review procedure

2   contained in those sections was not intended to resolve disputes over whether contracts were

3   executed by TAC in a "commercially reasonable manner consistent with past practices" as is

4   required under § 5.28(c).  The Court disagrees.

5       The plain language of a contract must be given its ordinary meaning.  <u>Seaford Golf and

6   Country Club v. E.I. duPont de Nemours and Co.</u>, 925 A.2d 1255, 1261 (Del. Supr. 2007)

7   ("When the language of a . . . contract is clear and unequivocal, a party will be bound by its

8   plain meaning because creating an ambiguity where none exists could, in effect, create a new

9   contract with rights, liabilities and duties to which the parties had not assented. . . ." (quotations

10  and citations omitted)).[4]  The current dispute between the parties falls within the plain language

11  of the arbitration provision of the Merger Agreement.  § 5.28(b) explicitly states that a dispute

12  over "any" of the information contained in TAC's written notice of adjustment "shall" be

13  resolved by the dispute resolution procedures contained in §§ 3.4 and 3.5.  It is clear that the

14  dispute here is over information contained in TAC's written notice of adjustment – specifically,

15  TAC's calculation of its adjustment under § 5.28(c) of the Merger Agreement.  Plaintiffs

16  contend that TAC's calculation, as contained in its notice of adjustment, did not properly

17  account for TAC's "failure . . . to operate the business of the Surviving Corporation in a

18  commercially reasonable and prudent manner consistent with past practices" as is required by §

19  5.28(c).  TAC, on the other hand, contends that its adjustment is consistent with its obligations

20  under the Merger Agreement.  Under § 5.28(b), disputes over "the amount of any proposed

21  adjustment to the Retained Amount in accordance with 5.28(c)" must be resolved in accordance

22  with the arbitration procedures laid out in §§ 3.4 and 3.5.

23

24          [4]§ 13.8 states that the Merger Agreement shall be "governed by and construed in accordance with

25  the domestic laws of the State of Delaware."

26  ORDER GRANTING DEFENDANT'S
    MOTION TO COMPEL ARBITRATION
    AND DENYING PLAINTIFFS' MOTIONS
    FOR SUMMARY JUDGMENT- 7

1    Despite the apparent clarity of the language quoted above, plaintiffs nevertheless argue

2    that the arbitration provision contained in § 5.28(b) should only be applied to "calculation- and

3    accounting-based disputes," and not to disagreements over TAC's "operation and conduct."

4    Response at p. 14.  Plaintiffs also characterize the arbitration provision in § 3.5 as being limited

5    to "disputes over the calculation of deductions from the Retained Amount."  Id.  As explained

6    above, plaintiffs' reading of § 5.28(b) is not supported by its text which states that "any" dispute

7    over the information contained in TAC's notice of adjustment be resolved through "the same

8    resolution procedure provided in Sections 3.4 and 3.5."  Put simply, § 5.28(b) does not indicate

9    that disputes should be subdivided as plaintiffs suggest.

10    In this way, the Merger Agreement is materially different from the acquisition agreement

11    at issue in First Allamerica Financial Insurance Co. v. Minnesota Life Insurance Co., 188 F.

12    Supp.2d 101 (D. Mass 2002), a case cited by plaintiffs in support of their contention that the

13    current dispute falls outside of the parties' arbitration provision.  In First Allamerica, the

14    arbitration clause stated:

> Any dispute or difference with respect to *the operation* of this Agreement
> on which amicable understanding cannot be reached shall be submitted to
> binding arbitration, to be conducted in accordance with the Commercial
> Rules of the American Arbitration Association.

17    Id. at 103 (emphasis added).  Finding that the language of the contract must be given its "plain

18    and ordinary meaning," the court concluded that the arbitration provision was limited to disputes

19    over the "operation" of the agreement and did not include disputes over the "interpretation" of

20    the agreement.  Id. at 104. ("The omission of any reference to 'interpretation' of the Agreement

21    supports the limited application of the arbitration clause").  The Merger Agreement in this case

22    contains no similar distinction between disputes over the calculation of the Retained Amount

23    that center on the reasonableness of TAC's performance of contracts and those that center on

24    disagreements over the mathematical aspects of the calculation of profits.

25

26    ORDER GRANTING DEFENDANT'S
MOTION TO COMPEL ARBITRATION
AND DENYING PLAINTIFFS' MOTIONS
FOR SUMMARY JUDGMENT- 8

1        Nor does the Merger Agreement isolate the arbitration process from questions of law and

2    fact as plaintiffs maintain.  For instance, in calculating "actual gross profit" on performance

3    contracts not completed by December 31, 2006, a task that plaintiffs appear to concede would

4    fall under the accountant review provision, the party conducting the calculation must factor into

5    its calculation "the Relevant Facts," including "any past or present fact, situation, circumstance,

6    status, condition, activity, practice, plan, occurrence, event, incident, action, failure to act or

7    transaction that an individual acting diligently would reasonably take into account at such time

8    in calculating the actual project cost under such contract for purposes of determining the actual

9    gross profit of such contract."  § 5.28(b).  Also to be considered in this calculation are

10   "Reasonable Assumptions," which include "all assumptions that an individual acting diligently

11   would reasonably make at such time in calculating the estimated project cost under such contract

12   for purposes of determining the actual gross profits of such contract."  Id.  Such considerations

13   veer away from the purely numerical calculations plaintiffs contend are to be made by the

14   accountants, and instead appear closer to the sort of practical fact-based judgments required by

15   the "commercially reasonable and prudent" analysis required by § 5.28(c).

16       The dispute resolution procedure contained in the Merger Agreement can also be

17   distinguished from the dispute resolution provision at issue in Fit Tech, Inc. v. Bally Total

18   Fitness Holding Corp., 374 F.3d 1, 2 (1st Cir. 2004), another case cited favorably by plaintiffs.

19   In Fit Tech, the First Circuit upheld the district court's decision to refer purely accounting issues

20   to an accounting firm for arbitration, while retaining jurisdiction over questions of operational

21   misconduct on the part of a buyer.  Though that case involved a purchase agreement and

22   accountant review provision similar in some ways to the Merger Agreement here, the arbitration

23   clauses are different in several material respects.  First, Fit Tech involved an arbitration clause

24   which was limited to "any disagreement with respect to the Advance Earn-Out Schedule or the

25

26   ORDER GRANTING DEFENDANT'S
     MOTION TO COMPEL ARBITRATION
     AND DENYING PLAINTIFFS' MOTIONS
     FOR SUMMARY JUDGMENT- 9

Earn-Out Schedule."  Given that the earning schedules were "defined in detail in the purchase

agreement in accounting terms," the court concluded that only those disagreements involving

"accounting issues arising in the calculations that underpin the schedules" should be subject to

the accountant arbitration clause.  The arbitration clause here is not so limited.  § 5.28(b)

explicitly requires "any" disagreement over "the amount of any proposed adjustment to the

Retained Amount in accordance with § 5.28(c)" to be resolved through the arbitration

procedures contained in §§ 3.4 and 3.5.  § 5.28(c), in turn, explains that TAC's performance of

its contracts in a "commercially reasonable and prudent manner" is a factor to be considered in

calculating any adjustment to the Retained Amount.  Thus, unlike in <u>Fit Tech</u>, the arbitration

provision here explicitly references and encompasses factual disagreements over the

reasonableness of TAC's execution of its contracts.[5]

Plaintiffs also argue that other provisions of the Merger Agreement reveal that the

accountant review procedure contained in § 3.5 could not have been drafted to apply to

disagreements relating to § 5.28.  <u>See</u> Response at p. 6.  For instance, plaintiffs point out that §

3.5 cannot be read to apply to disputes arising out of § 5.28 because § 3.5 "requires that the

accounting firm jointly chosen by the parties be supplied only with closing date financial

statements, statements of closing net worth and net indebtedness, and other documents which

bear no relevance to the execution of Performance Contracts or the propriety of proposed

adjustments to the retained amount."  <u>Id.</u>  Plaintiffs' argument proves too much.  For the Court

to adopt such a reading of the Merger Agreement would require that it render § 5.28(b)'s direct

---

[5] The unpublished Fourth Circuit case of <u>New River Management Co. v. Henry Schein, Inc</u>., 9
Fed.Appx. 232 (4th Cir. 2001) is similarly distinguishable.  There the court upheld the denial of a motion
to stay litigation pending arbitration and found that an accountant arbitration provision was not applicable
to a dispute over indemnification because "[n]either the materials submitted to the accountant for review
nor the provisions of the Agreement governing the accountant's resolution of disputes contain any
reference at all to indemnification."  <u>Id.</u>  Here, the Merger Agreement is not similarly silent.

ORDER GRANTING DEFENDANT'S
MOTION TO COMPEL ARBITRATION
AND DENYING PLAINTIFFS' MOTIONS
FOR SUMMARY JUDGMENT- 10

1    reference to the dispute resolution procedures in § 3.5 meaningless.  As plaintiffs themselves

2    argue in another portion of their response memorandum, "a contractual provision should not be

3    rendered superfluous by judicial interpretation."  Id. at p. 14 (citing Gray v. Travelers Indem.

4    Co., 280 F.2d 549 (9th Cir. 1960)).

5            The more reasonable interpretation of § 5.28(b)'s requirement that parties "follow the

6    same resolution procedure provided in Sections 3.4 and 3.5" is to require the parties to follow

7    the overall procedural roadmap provided by §§ 3.4 and 3.5.  This entails (1) the provision of

8    reasonable access to personnel and records by TAC, (2) the production of a notice of

9    disagreement or agreement by the shareholder representatives together with a report detailing

10   their differences with TAC if they exist, (3) a good faith effort by the parties to reach agreement,

11   and (4) ultimately the submission of the dispute to a mutually agreed upon accounting firm for a

12   "final, conclusive, and binding" report if necessary.  See §§ 3.4 and 3.5.  In order to avoid

13   rendering § 5.28(b)'s reference to § 3.5's mediation procedures meaningless, the only necessary

14   alteration to the procedures would be to require the parties to provide the accounting firm with

15   information and data that is relevant to determining the proper adjustment to the Retained

16   Amount, rather than information related to the determination of closing net worth and net

17   indebtedness.  Indeed, this understanding of the process is remarkably similar to the one

18   plaintiffs described in their memorandum for summary judgment.  See Motion for Summary

19   Judgment Regarding Payment of Retained Amount at pp. 3-4 (characterizing the five step

20   process that was triggered once TAC sought to take an offset against the Retained Amount).

21           The Court is also not persuaded by plaintiffs' contention that § 13.14 of the Merger

22   Agreement demonstrates the parties' intent to resolve this dispute in court rather than through

23   the dispute resolution procedures provided in §§ 3.4 and 3.5.  § 13.14 of the Merger Agreement

24   states in relevant part:

25

26   ORDER GRANTING DEFENDANT'S
     MOTION TO COMPEL ARBITRATION
     AND DENYING PLAINTIFFS' MOTIONS
     FOR SUMMARY JUDGMENT- 11

> [E]ach of the Parties agrees that the other Parties shall be entitled to an injunction or injunctions to prevent breaches of the provisions of this Agreement and to enforce specifically this Agreement and the terms and provisions hereof in any action instituted in any court of the United States or any state thereof having jurisdiction over the Parties and the matter, in addition to any other remedy to which they may be entitled, at law or in equity.

Plaintiffs do not argue that § 13.14 renders § 5.28(b)'s dispute resolution provision completely irrelevant, but instead argue that the dispute resolution procedure should only be read to apply to "disputes concerning calculation and numerical amount (for which accountant review is most appropriate), while reserving judicial remedies for disputes involving broad factual and legal issues such as those present here." Response at p. 14. Plaintiffs' argument, therefore, is not that § 13.14 requires all disputes between the parties to be resolved in court, but rather that § 5.28(b)'s dispute resolution procedure does not apply to the current dispute. As discussed above, the Court does not believe that plaintiffs' overly narrow interpretation of § 5.28(b)'s dispute resolution provision is justified when § 5.28(b) is read in conjunction with the other relevant portions of the Merger Agreement.

Finally, plaintiffs argue that even if §§ 3.4 and 3.5 are applicable to this dispute, TAC has failed to perform the necessary prerequisites for a meaningful accountant review to occur and that TAC cannot now seek to enforce a term of the contract that it prevented plaintiffs from executing. See Response at pp. 15-16. Similarly, plaintiffs contend in their summary judgment memoranda that the access and cooperation provisions contained in §§ 3.4 and 3.5 were conditions precedent to TAC's right to withhold the Retained Amount and that TAC's failure to satisfy these conditions precludes TAC's right to withhold any funds. The Court will not address the substance of these arguments, however, because they are questions of procedural arbitrability that should be resolved by the arbitrator. As the Supreme Court held in John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1963):

ORDER GRANTING DEFENDANT'S
MOTION TO COMPEL ARBITRATION
AND DENYING PLAINTIFFS' MOTIONS
FOR SUMMARY JUDGMENT- 12

1
2

> once it is determined, . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.

3  See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24-25 (1983) (there

4  is a presumption that the arbitrator should decide "allegaion[s] of waiver, delay, or a like defense

5  to arbitrability").  In John Wiley, a key dispute between the parties centered on whether one

6  party's failure to abide by the first two steps of a grievance procedure relieved the other party of

7  their duty to arbitrate under the third step of the same procedure.  Id. at 556.  Rather than

8  reaching the merits of this argument, the Court held that questions of whether "grievance

9  procedures or some part of them apply to a particular dispute, whether such procedures have

10  been followed or excused, or whether the unexcused failure to follow them avoids the duty to

11  arbitrate" were procedural questions that should be resolved by the arbitrator.  Id. at 557.  The

12  Supreme Court recently reiterated this holding in Howsam v. Dean Witter Reynolds, Inc., 537

13  U.S. 79, 84-85 (2002):

14
15
16

> [I]n the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, *and other conditions precedent to an obligation to arbitrate* have been met, are for the arbitrators to decide.

17  (quoting Revised Uniform Arbitration Act of 2000, § 6, comment 2) (emphasis added).

18  Plaintiffs' arguments regarding TAC's failure to provide reasonable access to personnel and

19  documents present questions of procedural arbitrability that the Supreme Court has indicated

20  should be resolved by the arbitrator.  The Court will therefore not address the substance of such

21  arguments in this order.[6]

22
23

24  [6] For the same reason, the Court also declines plaintiffs' invitation to perform a supervisory role in establishing the procedural rules governing the arbitration process.  See Motion for Partial Summary

25  Judgment at p. 8 n.6.

26  ORDER GRANTING DEFENDANT'S
MOTION TO COMPEL ARBITRATION
AND DENYING PLAINTIFFS' MOTIONS
FOR SUMMARY JUDGMENT- 13

1

## IV. CONCLUSION

2        For all the foregoing reasons, defendant's motion to compel arbitration (Dkt. #12) is

3    GRANTED and the above-captioned matter is hereby STAYED.[7]  Defendants' motions for

4    summary judgment (Dkt. #17) (Dkt. #20) are DENIED.

5

6        DATED this 30th day of August, 2007.

7

8

9                           Robert S. Lasnik

10                         United States District Judge

11

12

13

14

15

16

17

18

19

20

21        [7] It appears that there remains an ongoing dispute over plaintiffs' claims for attorneys' fees and

22    costs arising from their Third Cause of Action.  Though that dispute is not subject to the arbitration provision, the Court believes that judicial resources would be best utilized by resolving that disagreement

23    at the conclusion of the arbitration process.  See Moses H. Cone Mem'l Hosp., 460 U.S. at 20 n.23 (Where the litigation involves claims that are not subject to an arbitration agreement, the question of

24    whether to stay the nonarbitrable portions of the proceeding is left to the discretion of the district court.).

25    As such, resolution of that dispute is stayed pending completion of arbitration.

26    ORDER GRANTING DEFENDANT'S
MOTION TO COMPEL ARBITRATION
AND DENYING PLAINTIFFS' MOTIONS
FOR SUMMARY JUDGMENT- 14